.UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

MAY 17 2012

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Crim. No. H 12-305 |
| ENRIQUE MORALES (aka "Kike"), | : | |
| | : | **FILED UNDER SEAL** |
| | : | |
| | , | UNSEALED PER ARREST |
| | : | |
| Defendants | : | |

## INDICTMENT

The Grand Jury charges that:

### Background

1. Beginning on or about October 30, 2009, until on or about September 2011, defendants Enrique Morales, aka "Kike", operated a money transmitting business, based primarily out of Houston, Texas and unknown parts of Mexico, that transmitted mostly U.S. currency (hereinafter, these defendants collectively are referred to as "the organization"). At the instruction of its clients or agents of the clients, the organization picked up bulk currency in several U.S. cities and received bulk currency in Houston, TX, deposited it into various bank accounts owned by businesses registered with the state of Texas by certain defendants, and then transferred the money to bank accounts owned by various other individuals and companies at the instruction of the organization's clients or agents of the clients.

2. Defendant Enrique Morales, aka "Kike", a Mexican national, beginning on a date unknown to the grand jury and until about September 2011, was a part owner of the organization's money transmitting business and managed the day-to-day operations of the

1

organization's money transmitting business activity in the U.S. During that period, Enrique Morales's responsibilities included, but were not necessarily limited to, supervising at least four employees (all named in this indictment), arranging for the organization's money couriers to pick up bulk currency several times per week, instructing the couriers to deposit the currency into the organization's business bank accounts, and recruiting new clients (i.e., people who had access to bulk currency and wanted it transmitted) for the organization. In addition, Enrique Morales registered with the state of Texas at least one company on behalf of the organization and opened a business bank account in its name, through which the organization transferred bulk currency.

3. _____ and also a Mexican national, beginning on a date unknown to the grand jury and until about September 2011, was a part owner of the organization's money transmitting business. During that period, _____ responsibilities included, but were not necessarily limited to, participating in and having a vote on important decisions on behalf of the organization's business and recruiting new clients for the organization. In addition, _____ registered with the state of Texas at least one company on behalf of the organization and opened a business bank account in its name, through which the organization transferred bulk currency.

4. _____ a Mexican national believed to be living in Mexico, beginning on a date unknown to the grand jury and until about September 2011, managed the Mexican operation of the organization's money transmitting business. During that period, _____ responsibilities included, but were not necessarily limited to, negotiating a U.S. dollar / peso exchange rate with a Mexican broker, instructing Enrique Morales what to do with the money once it was deposited into the organization's business bank accounts in the U.S., and obtaining and communicating confirmation of those and other related financial transactions.

5. _____, a Mexican national believed to be living in Mexico, beginning on a date unknown to the grand jury and until about September 2011, facilitated the organization's money transmitting business by providing suppliers, unknown to the grand jury, of bulk currency.

6. _____ a Mexican national believed to be living in Mexico, beginning on a date unknown to the grand jury and until about September 2011, facilitated the organization's money transmitting business by providing suppliers, unknown to the grand jury, of bulk currency.

7. _____, a Mexican national believed to be living in Mexico, beginning on a date unknown to the grand jury and until about September 2011, facilitated the organization's money transmitting business by recruiting at least one bulk currency supplier. In addition, ___ registered with the state of Texas at least two companies on behalf of the organization and opened business bank accounts in their names, through which the organization transferred bulk currency.

8. _____, a U.S. citizen, beginning on or about October 2009 and until about November 2011, regularly took receipt of bulk currency on behalf of the organization and made large currency deposits into the organization's various business bank accounts in the Houston, TX area and elsewhere. In addition, ___ registered with the state of Texas at least two companies on behalf of the organization and opened business bank accounts in their names, through which the organization transferred bulk currency.

9. _____, a U.S. citizen, between about November 2010 and about September 2011, took receipt of bulk currency on several occasions in various U.S. cities and delivered it to the organization's primary location in Houston, TX, and regularly made large currency deposits on behalf of the organization into the organization's various business bank accounts in the Houston, TX area and elsewhere. In addition, ___ registered with the state of Texas at least one company on behalf of the organization and opened a business bank account in the company's name, through which the organization transferred bulk currency.

10. _____, a U.S. citizen, between about April 2011 and about September 2011, took receipt of bulk currency several times on behalf of the organization and made numerous large currency deposits into the organization's various business bank accounts in the Houston, TX area and elsewhere.

11. Defendant _____, a U.S. citizen, between about March 2011 and about September 2011, acted as office/business manager for the organization. During that time, ___ responsibilities included, but were not limited to, coordinating instructions from Enrique Morales and others involving bulk currency drop-offs at the organization's Houston office and subsequent deposits and transfers, as well as helping maintain the organization's business activity ledger.

12. Beginning on or about February 2011 until at least September 2011, the office located at 16215 Westheimer Rd, Suite 107, Houston, Texas 77082 was used primarily to operate or facilitate the money transmitting business described in this indictment.

3

## COUNT ONE

[18 U.S.C. §371]

### OBJECT OF THE CONSPIRACY

13. Beginning on or about October 30, 2009 and continuing until on or about November 12, 2011, within the Southern District of Texas and elsewhere, and within the jurisdiction of this court,

**ENRIQUE MORALES (aka "Kike")**,



defendants herein, and others known and unknown to the grand jury, conspired and agreed with one another to knowingly and intentionally commit an offense against the United States, in violation of Title 18, United States Code, Section 371, namely, to operate an illegal money transmitting business, in violation of Title 18, United States Code, Sections 1960(a) and 1960(b)(1)(A), (B), and (C).

### MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

14. Defendants Enrique Morales, and others recruited "clients" who had large amounts of U.S. currency they wanted to be picked up in the United States, transferred through the United States financial system, and converted to Mexican pesos.

15. _____ and others negotiated an exchange rate.

16. Defendant Enrique Morales and others arranged for defendants to take possession of the U.S. currency from people known and unknown to the grand jury, which ı each did; defendant Enrique Morales and others also arranged for the U.S. currency to be delivered to the organization's primary location at 16215 Westheimer Rd, Suite 107, Houston, Texas 77082.

17. Defendants Enrique Morales, . others instructed, directly or through defendant or otherwise, defendants to deposit the U.S. currency into several business bank accounts controlled by the money transmitting business.

18. Defendants Enrique Morales,                                                      r were responsible for opening at least one of these business bank accounts.

19. Defendants         , Enrique Morales and others instructed people known and unknown to the grand jury to cause certain amounts of the money in those bank accounts to be transferred to bank accounts in the names of people and businesses known and unknown to the grand jury.

20. At the direction of defendant         business's "clients," and others known and unknown to the grand jury, pesos were transferred to bank accounts in the names of people and businesses in Mexico known and unknown to the grand jury, based on the negotiated exchange rate and the corresponding amount of U.S. dollars the money transmitting business had transmitted, minus agreed upon commission and expenses.

## OVERT ACTS

21. In furtherance of the conspiracy and to accomplish the object of the conspiracy, at least one of the co-conspirator defendants committed various overt acts in the Southern District of Texas or elsewhere, including, but not limited to, the following:

22. On or about April 27, 2011,                   was transporting approximately $364,810 in U.S. currency to Houston when he was stopped by Houston Police Department and the currency was seized.

23. On or about May 31, 2011, defendant         drafted a contract for defendant         to sign and leave in the vehicle he used to transport currency that included language that the "driver has no knowledge of . . . any illegal or explicit materials."

24. On or about June 24, 2011, defendant         was transporting approximately $350,178 in U.S. currency to Houston when he was stopped by Houston Police Department and the currency was seized.

25. On November 12, 2011, defendant         was transporting approximately $319,430 in U.S. currency to Houston when he was stopped in Lagrange, Georgia by Georgia Department of Public Safety and the currency was seized.

## COUNT TWO

[18 U.S.C. §1956(h)]

### OBJECT OF THE CONSPIRACY

26. Beginning on or about October 30, 2009 and continuing until on or about November 12, 2011, within the Southern District of Texas and elsewhere, and within the jurisdiction of this court,

**ENRIQUE MORALES (aka "Kike"),**

),

defendants herein, and others known and unknown to the grand jury, conspired and agreed with one another to knowingly and intentionally commit an offense against the United States, in violation of Title 18, United States Code, Section 1956(h), to wit:

> (a) to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Title 21, United States Code, Sections 841 and 846, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

27. Defendant Enrique Morales and others arranged for defendants ⎯⎯⎯⎯⎯⎯ to travel to places inside and outside of Texas to take possession of proceeds that had been derived from the sale of illegal narcotics; defendant Enrique Morales and others

6

also arranged for the drug trafficking proceeds to be delivered to the organization's primary location at 16215 Westheimer Rd, Suite 107, Houston, Texas 77082.

28. Defendants Enrique Morales,            others instructed, directly, through defendant             or otherwise, defendants             to deposit the drug trafficking proceeds into several business bank accounts controlled by the organization.

29. Defendants            and Enrique Morales and others instructed people known and unknown to the grand jury to cause certain amounts of the money in those bank accounts to be transferred, by check, wire, or otherwise, to people and businesses known and unknown to the grand jury.

30. Defendants Enrique Morales,            knew that these transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the drug trafficking proceeds.

## COUNT THREE

[18 U.S.C. §1956(a)(1)(A)(i)]

31. On or about January 28, 2011, within the Southern District of Texas and elsewhere, and within the jurisdiction of this court,

### ENRIQUE MORALES (aka "Kike"),

defendant herein, knowingly conducted, or caused to be conducted, a financial transaction that affected interstate and foreign commerce, specifically defendant Enrique Morales caused a wire transfer for $90,225 from a Wells Fargo Bank account in the name of Mexpress Commercial Services, LLC, an account for which defendant Enrique Morales was the only authorized signatory, for the purchase an airplane.

32. The financial transaction involved proceeds of a specified unlawful activity, namely, the operation of an illegal money transmitting business, in violation of Title 18, United States Code, Sections 1960(b)(1)(A), (B) and (C).

33. Defendant Enrique Morales knew that the money involved in the transaction represented proceeds of some form of unlawful activity.

34. Defendant Enrique Morales purchased the plane with the intent to promote the carrying on of the specified unlawful activity, namely the operation of an illegal money transmitting business, in violation of Title 18, United States Code, Section 1960(b)(1)(A), (B) and (C).

35. All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## NOTICE OF CRIMINAL FORFEITURE

1.    Pursuant to Title 18, United States Code, Sections 982(a)(1), 981(a)(1)(A), 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of the offense charged in Count One, the following defendants:

**ENRIQUE MORALES (aka "Kike"),**

shall forfeit to the United States of America any property, real or personal, involved in a transaction or attempted transaction in violation of the offense charged in Count One or any property traceable to such property. Additionally, the defendants shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of the offense charged in Count One. The property to be forfeited includes, but is not limited to, the following:

    a.    Money judgment payable to the United States of America in the approximate amount of $27,492,888;

    b.    $220,998.00 in United States currency seized on August 31, 2011, in Charlotte, North Carolina, from a vehicle occupied by

    c.    1979 Piper Aircraft Model PA32RT-301T "Turbo Lance II" with Aircraft Registration No. N3068T and Aircraft Serial No. 32R-7987111.

2.    Pursuant to Title 18, United States Code, Sections 982(a)(1), 981(a)(1)(A), 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of the offense charged in Count Two, the following defendants:

**ENRIQUE MORALES (aka "Kike"),**

shall forfeit to the United States of America any property, real or personal, involved in a transaction or attempted transaction in violation of the offense charged in Count Two or any property traceable to such property. Additionally, the defendants shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of the offense charged in Count Two. The property to be forfeited includes, but is not limited to, the following:

    a.    Money judgment payable to the United States of America in the approximate amount of $27,492,888.

    b.    $220,998.00 in United States currency seized on August 31, 2011, in Charlotte, North Carolina, from a vehicle occupied by

    c.    1979 Piper Aircraft Model PA32RT-301T "Turbo Lance II" with Aircraft Registration No. N3068T and Aircraft Serial No. 32R-7987111.

3.    Pursuant to Title 18, United States Code, Sections 982(a)(1), 981(a)(1)(A), 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of the offense charged in Count Three, the following defendant:

**ENRIQUE MORALES (aka "Kike"),**

shall forfeit to the United States of America any property, real or personal, involved in a transaction or attempted transaction in violation of the offense charged in Count Three or any property traceable to such property. Additionally, the defendant shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of the offense charged in Count Three. The property to be forfeited includes, but is not limited to, the following:

    a.    Money judgment payable to the United States of America in the approximate amount of $90,225; and

    b.    1979 Piper Aircraft Model PA32RT-301T "Turbo Lance II" with Aircraft Registration No. N3068T and Aircraft Serial No. 32R-7987111.

<u>Substitute Property</u>

If any of the property described above, as a result of any act or omission of any of the defendants:

    a.    cannot be located upon the exercise of due diligence;
    b.    has been transferred or sold to, or deposited with, a third party;
    c.    has been placed beyond the jurisdiction of the court;
    d.    has been substantially diminished in value; or
    e.    has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461.

A TRUE BILL.

Original Signature on File

FOREPERSON OF THE GRAND JURY

Kenneth Magidson
United States Attorney

Jennifer Shasky Calvery, Chief
Asset Forfeiture and Money
   Laundering Section
U.S. Department of Justice
Criminal Division

By: _____
Ralph E. Imperato
Assistant United States Attorney

_____
Keith Liddle
Trial Attorney
Asset Forfeiture and Money
   Laundering Section
U.S. Department of Justice
Criminal Division